[Cite as *State v. Johnson*, 2017-Ohio-7702.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,      )
            )
  PLAINTIFF-APPELLEE,  )
            )   CASE NO. 15 MA 0197
V.           )
            )   OPINION
ROBERT JOHNSON,    )
            )
  DEFENDANT-APPELLANT. )

CHARACTER OF PROCEEDINGS:  Criminal Appeal from Court of Common
                  Pleas of Mahoning County, Ohio
                  Case No. 14 CR 111

JUDGMENT:         Affirmed

APPEARANCES:
For Plaintiff-Appellee      Paul Gains
                  Prosecutor
                  Ralph Rivera
                  Assistant Prosecutor
                  21 West Boardman St., 6th Floor
                  Youngstown, Ohio 44503-1426

For Defendant-Appellant     Attorney Bryan Hicks
                  P.O. Box 359
                  Lebanon, Ohio 45036

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: September 12, 2017

DONOFRIO, J.

{¶1} Defendant-appellant, Robert Johnson, appeals from a Mahoning County Common Pleas Court judgment convicting him of gross sexual imposition following a jury trial.

{¶2} For some time during 2011 and 2012, E.J., who was eight and then nine years old, resided with her paternal grandmother and appellant (her grandmother's husband) in Youngstown. In the spring of 2012, E.J. went back to living with her mother, E.A.

{¶3} In October 2013, E.J. disclosed to her best friend that appellant had raped her during the time she had been living at her grandmother's house. The friend told E.A. E.J. then told her mother what had happened. E.J. alleged that appellant raped her on two separate occasions in 2012.

{¶4} E.A. called the police. Youngstown Police Officer Melvin Johnson took a statement from E.J. E.J. was also referred to the Child Advocacy Center (CAC) at Akron Children's Hospital. At the CAC, E.J. underwent a forensic interview and physical examination.

{¶5} On February 6, 2014, a Mahoning County Grand Jury indicted appellant on two counts of rape, first-degree felonies in violation of R.C. 2907.02(A)(1)(b)(B), and two counts of gross sexual imposition, third-degree felonies in violation of R.C. 2907.05(A)(4)(C).

{¶6} The matter proceeded to a jury trial. The jury found appellant not guilty of both counts of rape and one count of gross sexual imposition. The jury found him guilty of the remaining count of gross sexual imposition.

{¶7} At a later sentencing hearing, the trial court sentenced appellant to 60 months in prison. It also designated him a Tier II sex offender.

{¶8} Appellant filed a timely notice of appeal on November 4, 2015. He now raises four assignments of error.

{¶9} Appellant's first assignment of error states:

THE COURT ERRED IN ADMITTING THE VIDEOTAPED INTERVIEW AS A PRIOR CONSISTENT STATEMENT.

{¶10} E.J. was interviewed by a social worker at the CAC. The state offered the videotape of E.J.'s interview as a prior consistent statement after defense counsel brought out multiple discrepancies between E.J.'s testimony and her earlier statements. Appellant objected. (Tr. 209, 281). The trial court overruled the objection. (Tr. 288-289). The court ruled that the video was a prior consistent statement offered to rebut an express or implied allegation of recent fabrication. (Tr. 288-289). The video was then played for the jury. (Tr. 304).

{¶11} Appellant argues the court erred in allowing the interview to be played for the jury. He asserts that E.J.'s testimony and the videotaped statement had numerous inconsistencies. Moreover, appellant argues the state simply wanted to bolster its witness since she had been discredited on cross-examination, which appellant asserts is not a basis for admitting a prior consistent statement. In order to admit a prior consistent statement, appellant urges, there must be an allegation of a recent fabrication. That was not the case here, appellant states. He contends that his defense was not that the allegations were recently false but that they have always been false.

{¶12} Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is inadmissible. Evid.R. 802.

{¶13} Evid.R. 801(D)(1)(b) provides that a statement is not hearsay, and is therefore admissible if it is a prior statement by a witness that is "consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]"

{¶14} The Twelfth District explained when a court may admit a prior consistent statement:

> For the rule to apply, the declarant must be subject to cross-examination and the statement must be offered to rebut a charge that the declarant lied or was improperly influenced in his testimony. [*State v.*] *Williams*, [12th Dist. No. CA2007-04-087,] 2008-Ohio-3729, ¶ 12.

To be admissible, prior consistent statements must have been made before the existence of any motive or influence to falsify testimony. *Id.* In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation. [*State v.*] *Grays*, [12th Dist. No. CA2001-02-007, 2001-Ohio-8679] at 12.

*State v. Smith*, 12th Dist. No. CA2009-02-038, 2010-Ohio-1721, ¶ 103.

**{¶15}** Moreover, a court may not admit prior consistent statements in order to counter all forms of impeachment or to bolster the witness merely because she has been discredited. *State v. Wolff*, 7th Dist. No. 07 MA 166, 2009-Ohio-2897, ¶ 75, citing *Tome v. U.S.*, 513 U.S. 150, 157, 115 S.Ct. 696, 701, 130 L.Ed.2d 574 (1995). Evid.R. 801(D)(1)(b) only allows hearsay statements which were made prior to the motivation to fabricate. *Id.*, citing *State v. Nichols*, 85 Ohio App.3d 65, 71, 619 N.E.2d 80. (4th Dist.1993).

**{¶16}** In this case, during his opening statement, defense counsel said that the alleged events did not occur. (Tr. 154-155). Counsel stated that the accusations against appellant were false and slanderous. (Tr. 155). Counsel further stated he had to be careful about calling people liars. (Tr. 155). And counsel stated that E.J. told many people about something "that occurred when it did not." (Tr. 155).

**{¶17}** During defense counsel's cross-examination of E.J., he questioned her about several inconsistencies between what she reported to police and the CAC and what she testified to on direct examination. Counsel brought out inconsistencies regarding a statement E.J. gave that appellant ran to the washer to wash his clothing when he heard the grandmother's car (Tr. 204), that E.J. locked herself in her room (Tr. 205-206), and that appellant engaged in anal intercourse with her (Tr. 206-207). Counsel then asked E.J. if she recognized the discrepancies between her statements and her testimony. (Tr. 207).

**{¶18}** Additionally, when cross-examining Officer Johnson, defense counsel elicited further inconsistencies with E.J.'s testimony regarding whether her legs were bound and what was used to bind her hands. (Tr. 236).

**{¶19}** In ruling on the issue, the trial court found the video of E.J.'s CAC interview was not hearsay because it was a prior consistent statement offered to rebut an express or implied charge of recent fabrication. (Tr. 288). The court then allowed the relevant portion of the interview to be played for the jury.

**{¶20}** In the interview, E.J. gave a statement very similar to her testimony. She described two instances of appellant raping her in the living room while her grandmother was at bingo.

**{¶21}** It has been consistently held that attacking a victim's credibility during opening statements is grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b). *State v. Hunt*, 10th Dist. No. 12AP-103, 2013-Ohio-5326, ¶ 39 ("Defense counsel's opening statement implied that Lewis had been untruthful in her statements to police. This was an allegation of recent fabrication or improper influence that allowed the state to introduce Lewis's prior consistent statements to rehabilitate her testimony."); *State v. Crawford*, 5th Dist. No. 07 CA 116, 2008-Ohio-6260, ¶ 64 ("It has previously been held that such implications [of fabrication] during opening statements are sufficient to allow the State's use of Evid.R. 801(D)(1)(b)"); *State v. Abdussatar*, 8th Dist. No. 86406, 2006-Ohio-803, ¶ 15 ("Attacking a victim's credibility during opening statement has been found to constitute sufficient grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b). Therefore, because defense counsel contended the victim fabricated the rape, and because the victim testified and was subject to cross-examination, the trial court did not err by allowing the letter to be admitted into evidence.")

**{¶22}** Given the numerous cases that have held that attacking a victim's credibility during opening statements is sufficient grounds for admitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b), we cannot conclude that the trial court abused its discretion in allowing the state to introduce

E.J.'s interview at the CAC.

{¶23} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶24} Appellant's second assignment of error states:

THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶25} Here appellant asserts the verdict was not supported by sufficient evidence. He contends that the only evidence upon which to convict him was E.J.'s testimony and her testimony was inconsistent with what she told the police and what she said during her CAC interview. Appellant points out that the jury acquitted him on three out of the four charges. He finds it incredible that the jury disbelieved E.J. as to three of the charges but believed her as to one of them. He then argues it is impossible for a rational trier of fact to find that E.J. was credible as to one incident of sexual contact but that she was incredible as to the other alleged incident of sexual contact and as to the two alleged incidents of rape.

{¶26} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶27} The jury convicted appellant of one count of gross sexual imposition in violation of R.C 2907.05(A)(4), which provides:

(A) No person shall have sexual contact with another, not the

spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies

    * * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶28}** We must examine the state's evidence to determine whether it presented evidence going to each element of gross sexual imposition.

**{¶29}** E.A. was the first witness. E.A. testified that during 2011 and 2012, E.J. was living with her paternal grandmother and appellant until she could resolve some housing issues. (Tr. 159-160). During this time, E.A. visited with E.J. during the week and spent weekends with her. (Tr. 161). During the time E.J. was living with her grandmother and appellant, E.A. stated that she noticed a change in E.J.'s personality where she became more anxious. (Tr. 162). E.A. stated that E.J. moved back in with her as soon as the school year ended in 2012. (Tr. 163). In April 2013, E.J.'s grandmother passed away. (Tr. 164). Approximately, a year and a half after moving back in with E.A., E.J. told her friend that appellant had raped her. (Tr. 174-175). The friend told E.A. (Tr. 174-175). E.A. stated that E.J. was upset, scared, and screaming. (Tr. 164). E.A. immediately contacted the police. (Tr. 165).

**{¶30}** E.J. was the next witness. She testified that during the time she lived with her grandmother and appellant, she was eight and then nine years old. (Tr. 183). She stated that twice, while she was living there, something bad happened. (Tr. 187).

**{¶31}** The first time, E.J. testified, her grandmother had gone to bingo and she was on the couch watching wrestling with appellant. (Tr. 187-188). She stated that appellant touched her leg and she told him to get off of her. (Tr. 188). E.J. stated appellant then went and retrieved some duct tape and rope from a cabinet near the kitchen. (Tr. 188). She testified that appellant tied her legs and duct-taped

her mouth and hands. (Tr. 188-189). She stated that appellant then vaginally raped her. (Tr. 189). She stated that it hurt. (Tr. 190). When appellant heard the grandmother's car, E.J. stated that he stopped, untied her, and told her to go upstairs. (Tr. 191). E.J. testified appellant told her he would kill her if she told anyone what he had done. (Tr. 192).

**{¶32}** The second time, E.J. testified, once again her grandmother had gone to bingo and she was home alone with appellant. (Tr. 193). E.J. was sitting on the couch. (Tr. 193). She stated that appellant used duct tape and rope to bind her up again. (Tr. 194). She stated that he showed her pictures in a magazine of girls' private parts. (Tr. 194). E.J. testified that appellant again vaginally raped her. (Tr. 196). Once again, E.J. stated, appellant stopped when he heard the grandmother's car approaching. (Tr. 197). She testified that he told her to go upstairs and he locked her in the spare bedroom. (Tr. 197). E.J. stated that her grandmother unlocked the door. (Tr. 197).

**{¶33}** E.J. testified she did not tell her grandmother what appellant did because she was scared. (Tr. 198). Eventually, E.J. testified, she told her friend what had happened. (Tr. 198). The friend told E.A. and E.J. then disclosed what had happened to E.A. (Tr. 198). Her disclosure occurred after her grandmother had passed away. (Tr. 198).

**{¶34}** Youngstown Police Officer Melvin Johnson was the next witness. Officer Johnson testified that he responded to a call on October 7, 2013 to take a report from E.J. (Tr. 222). At that time, E.J. was ten years old. (Tr. 227). Officer Johnson stated that E.J. was uncomfortable but willing to explain what had happened. (Tr. 227). At the conclusion of the interview, Officer Johnson stated, appellant was a suspect for a sexual assault. (Tr. 228-229).

**{¶35}** Detective David Lomax was assigned to investigate this case. (Tr. 248). Detective Lomax went to the CAC to view E.J.'s forensic interview through a two-way mirror. (Tr. 251). He found E.J.'s forensic interview to be consistent with the statement she gave to Officer Johnson. (Tr. 251-252). Detective Lomax then obtained a search warrant for appellant's home. (Tr. 253). During the search, he

noticed that the spare bedroom did lock from the outside with a key. (Tr. 259; Ex. 10). Detective Lomax also noted that duct tape was used in several areas throughout the house. (Tr. 259; Ex. 11-16).

{¶36} Dr. John Melville is the site director of the CAC. He observed E.J.'s forensic interview and conducted a physical examination of her. Dr. Melville stated that a social worker trained to conduct forensic interviews had interviewed E.J. (Tr. 302). The interview had been recorded and was played, in part, for the jury. (Tr. 304; Ex. 21). Dr. Melville testified that typically a ten-year-old would not be able to describe the sexual conduct E.J. described unless they actually experienced it. (Tr. 305). Dr. Melville testified that E.J.'s physical exam was normal with no specific evidence of sexual abuse. (Tr. 309). But the doctor explained that did not mean that the sexual conduct did not occur. (Tr. 309-310). He elaborated, stating that penetration does not always leave injuries and even when it does, the injuries heal very quickly so that any injuries E.J. sustained would have completely healed before he examined her. (Tr. 310).

{¶37} The above evidence is sufficient to support the appellant's conviction for gross sexual imposition. Appellant's argument here attacks E.J.'s credibility. But in a sufficiency of the evidence challenge, we are to view the evidence in the light most favorable to the state. *Smith*, 80 Ohio St.3d at 113. We are not to weigh or judge the evidence as we do in a manifest weight challenge. Here the state presented evidence that appellant had sexual contact with E.J. when she was less than 13 years old. This satisfies each of the elements of gross sexual imposition. R.C 2907.05(A)(4). Thus, the state produced sufficient evidence on the charge of gross sexual imposition.

{¶38} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶39} Appellant's third assignment of error states:

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶40}** Appellant contends in this assignment of error that the jury's verdict was against the manifest weight of the evidence. He argues the jury lost its way in finding that E.J. was credible as to one count, but not credible as to the other three counts. Appellant again focuses on the videotaped interview. He claims the improper admission of the video swayed the jury's emotions and was highly prejudicial.

**{¶41}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶42}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶43}** Appellant's main contention here is that the jury acquitted him on the two counts of rape and one count of gross sexual imposition yet it convicted him on the remaining count of gross sexual imposition. He seems to contend that the jury

either should have believed all of E.J.'s testimony or none of it. He suggests the jury's verdicts were inconsistent.

**{¶44}** The fact that the jury found appellant guilty of one count of gross sexual imposition and acquitted him on the other charges does not mean that appellant's conviction is against the manifest weight of the evidence.

**{¶45}** In *State v. Artz*, 2d Dist. No. 26411, 2015-Ohio-5291, the appellant was charged with 26 counts of rape and two counts of gross sexual imposition. The jury acquitted him of 21 counts of rape but found him guilty of five counts of rape and the two counts of gross sexual imposition. On appeal, the appellant raised a manifest weight of the evidence challenge arguing there was no explanation for why the jury would convict him of five counts of rape, but acquit him of the other 21 counts. *Id.* at ¶ 17. In overruling the appellant's assignment of error, the Second District noted:

> "[I]nconsistencies between verdicts on separate counts do not necessarily mean that a jury made a mistake." *State v. Hawkins*, 2d Dist. Montgomery No. 21691, 2007-Ohio-2979, 2007 WL 1723319, ¶ 24, citing *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). " '[E]ach count in an indictment charges a distinct offense and is independent of all other counts. Following that reasoning, * * * a jury's decision as to one count is independent of and unaffected by the jury's finding on another [count].' " *Id.* at ¶ 23, quoting *State v. Washington*, 126 Ohio App.3d 264, 276, 710 N.E.2d 307 (2d Dist.1998). (Other citation omitted.)

*Id.* at ¶ 20.

**{¶46}** Moreover, in addressing seemingly inconsistent verdicts, this court has noted that the trier-of-fact may believe or disbelieve any or all of the evidence or testimony from any witness. *State v. Smith*, 7th Dist. No. 06 BE 22, 2008-Ohio-1670, ¶ 49, citing *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. We further pointed out that the Ohio Supreme Court "has long held that there is no inconsistency or reversible error when a jury convicts a defendant on one count but acquits on a

separate but related count, 'in which there is no material difference.'" *Id*. at ¶ 66, citing *Browning v. State*, 120 Ohio St. 62, 71, 165 N.E. 566 (1929). We have also stated that "[e]ach count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt." *State v. Keyes*, 7th Dist. No. 08 CO 11, 2008-Ohio-6592, ¶ 28.

**{¶47}** Based on the above, appellant's conviction is not against the manifest weight of the evidence.

**{¶48}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶49}** Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED IN ITS SENTENCE.

**{¶50}** In his final assignment of error, appellant contends the trial court failed to give him the proper post-release control notification. He asserts the court informed him that the penalty for violating post-release control was up to one half of the original sentence but neglected to inform him that the maximum penalty for any one violation was nine months with the cumulative penalty for all violations being one half of his original sentence. Therefore, appellant argues his sentence is void and he must be resentenced.

**{¶51}** Pursuant to R.C. 2967.28(B), a sentencing court imposing a sentence for a felony sex offense shall include a requirement that the offender be subject to a period of post-release control imposed after the offender's release from prison. For a felony sex offense, there is a five-year mandatory post-release control term. R.C. 2967.28(B)(1).

**{¶52}** Additionally, when imposing a period of post-release control, the trial court shall "notify the offender that, if a period of supervision is imposed following the offender's release from prison * * * and if the offender violates that supervision or a condition of post-release control * * *, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed

upon the offender."  R.C. 2929.19(B)(2)(e).

**{¶53}**  Regarding postrelease control, the trial court advised appellant:

Upon your release from prison, a period of control or supervision by the Adult Parole Authority of a mandatory five years will be imposed as a condition of your release.  Then a violation of any post-release control rule or condition can result in a more restrictive sanction while released or a longer time of post-release control.  Also, if you commit a new felony while on post-release control, the Court may terminate the post-release control and impose a separate prison term for the violation of up to 12 months or the time left on the post-release control, whichever is greater, and to be served consecutive to any prison term imposed for the new felony.  If other post-release control terms are violated, the parole board may impose a prison term of up to one-half of the stated prison term originally imposed.

(Sentencing Tr. 10-11).  The trial court offered the same advisements in its judgment entry of sentence.

**{¶54}**  As can be seen from the above advisement, the trial court properly informed appellant he would be subject to a five-year term of postrelease control after his release from prison.  It also correctly informed him that, once he is released from prison, if he violates a condition of his post-release control then the parole board may impose a prison term of up to one-half of his original prison term.

**{¶55}**  The appellant in *State v. Zganjer*, 8th Dist. No. 94724, 2011-Ohio-606, made the same argument appellant makes here that the trial court was required to, and failed to, inform him that for any single post-release control violation he could be sentenced to nine months in prison.  In addressing this argument, the Eighth District stated:

R.C. 2967.28(F)(3) lists several options in the event a person violates the terms of postrelease control, among them the following: the

court or Adult Parole Authority may impose a more restrictive sanction; increase the duration of the postrelease control; impose a prison term for a single violation that may not exceed nine months; or impose a cumulative prison term for multiple violations of up to one-half of the stated prison term originally imposed upon the offender. The nine-month option applies to single violations of postrelease control; if the offender commits more than one violation (multiple offenses), the court may order a cumulative sentence that does not exceed one-half of the originally imposed prison term.

Given these options, the General Assembly apparently decided it would be cumbersome to require the courts to advise an offender of every possible option that might occur in the event of a violation of postrelease control. R.C. 2929.19(B)(3) states that "the court shall notify the offender that if a period of supervision is imposed following the offender's release from prison, as described in division (B)(3)(c) or (d) of this section, and if the offender violates that supervision * * *, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed on the offender." Instead of forcing the sentencing court to delve into the myriad of possibilities that could arise in the event of a future violation of postrelease control, the statute only requires the court to advise an offender of the maximum sanction that can be imposed in the event of a violation of postrelease control.

*Id.* at ¶ 2-3.

**{¶56}** Moreover, this court has not found any issue with post-release control advisements like the one given in this case. For instance in *State v. Wolters*, 7th Dist. No. 14 NO 417, 2014-Ohio-5515, ¶ 14, we found that the trial court adequately notified the appellant about post-release control during his sentencing hearing. The trial court in *Wolters* gave the same advisements as the trial court did in this case that

the appellant would be placed on post-release control for a period of five years following his release from prison and if he violated any terms of his post-release control he could be sent back to prison for a maximum term of one-half of his original sentence. *Id.* And in *State v. Holsinger*, 7th Dist. No. 13 CO 38, 2014-Ohio-2523, ¶ 13, this court found that "the trial court properly notified Holsinger about his five-year post-release control term, along with the consequences of violating post-release control" when it informed him of the maximum prison term of one-half of his original sentence for violation of post-release control.

{¶57} Thus, in this case, the trial court properly advised appellant of the terms of his post-release control.

{¶58} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶59} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.