[Cite as *State v. Mencer*, 2018-Ohio-1766.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 16 JE 0024 |
| V. | ) | |
| | ) | OPINION |
| JOHN F. MENCER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common
Pleas of Jefferson County, Ohio
Case No. 15 CR 87.

JUDGMENT:                                      Affirmed.

APPEARANCES:

For Plaintiff-Appellee                          Attorney Jane M. Hanlin
Prosecuting Attorney
Attorney Jeffrey Bruzzese
Assistant Prosecutor
Jefferson County Justice Center
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant                      Attorney Bernard Battistel
Scarpone & Associates
2021 Sunset Boulevard
Steubenville, Ohio  43952

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated:  May 2, 2018

DONOFRIO, J.

**{¶1}** Defendant-appellant, John Mencer, appeals from a Jefferson County Common Pleas Court judgment convicting him of rape and sexual battery following a jury trial.

**{¶2}** Appellant is the paternal grandfather of the victim in this case. At the time of the events at issue, the victim was five years old.

**{¶3}** In August 2014, the victim returned home to California, where he lives with his mother, after spending the summer in Steubenville, Ohio at appellant's house. His mother noticed a change in him, but could not pinpoint a cause. In October that year, the victim, who was then in the first grade, was troubled by a story at school about a child visiting his grandparents. He later broke down and told his mother that appellant had sexually assaulted him over the course of the summer he spent in Ohio. The mother contacted the Steubenville Police Department.

**{¶4}** Detective Erik Dervis investigated the mother's report. The victim was interviewed by a detective and a caseworker in California. That interview was recorded and a DVD of the interview was sent to Det. Dervis. Det. Dervis then contacted appellant. Appellant voluntarily went to the police station where the detective interviewed him. At first, appellant denied the allegations against him. But he eventually confessed to having the victim kiss his penis. Det. Dervis subsequently placed appellant under arrest.

**{¶5}** On June 10, 2015, a Jefferson County Grand Jury indicted appellant on one count of rape of a child under ten years of age, a first-degree felony in violation of R.C. 2907.02(A)(1)(b) and (B); one count of sexual battery, a third-degree felony in violation of R.C. 2907.03(A)(5); and one count of gross sexual imposition, a third-degree felony in violation of R.C. 2907.05(A)(4) and (C)(2).

**{¶6}** The matter proceeded to a jury trial. The jury heard testimony from the victim, the victim's mother, the detective involved, and appellant. The jury found appellant guilty of rape and sexual battery and not guilty of gross sexual imposition.

**{¶7}** The trial court subsequently held a sentencing hearing. On the rape count, the trial court sentenced appellant to life in prison with parole eligibility after 15

years and a $20,000 fine. On the sexual battery count, the court sentenced appellant to four years in prison and a $15,000 fine. The court ordered appellant to serve his sentences concurrently. It also classified appellant as a Tier III sex offender.

{¶8} Appellant filed a timely notice of appeal on October 18, 2016. He now raises three assignments of error.

{¶9} Appellant's first assignment of error states:

THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR RAPE.

{¶10} Appellant contends the victim admitted that his mother coached him to say that appellant put his penis inside of the victim's mouth. He also points out that the victim acknowledged that his testimony would determine whether or not appellant would go to prison. Based on these admissions by the victim, appellant contends the victim's testimony was insufficient to convict him.

{¶11} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶12} The jury convicted appellant of rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Pursuant to R.C. 2907.01(A), "sexual conduct" includes "anal

intercourse, [and] fellatio * * * between persons regardless of sex."

**{¶13}** The jury also convicted appellant of sexual battery in violation of R.C. 2907.03(A)(5), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

**{¶14}** We must review the state's evidence to determine whether any rational trier of fact could have found the essential elements of rape and sexual battery proven beyond a reasonable doubt. The state presented three witnesses.

**{¶15}** The victim, who was now seven years old, was the first to testify. The victim stated that when he stayed at appellant's house, appellant told him to play with his "weenie." (Tr. 192). The victim stated that he played with appellant's weenie with his hand and with his mouth and that he did not like it. (Tr. 192-193). He stated that one time he saw "gooey stuff" coming out of appellant's weenie and it went into his mouth. (Tr. 195). He also stated that appellant played with his weenie with his hand and also put it inside of his mouth. (Tr. 193). The victim further testified when he would do what appellant wanted him to do, appellant would give him a video game. (Tr. 193-194). But when he would not do what appellant wanted him to do, appellant would spank him. (Tr. 194). The victim stated that these events occurred while he was staying in Ohio while his grandmother was at the grocery store. (Tr. 195-195).

**{¶16}** On cross-examination, the victim stated that his mother talked to him about what he was supposed to testify to. (Tr. 198). Appellant's counsel asked the victim several questions regarding whether his mother talked to him about the allegations and whether she told him what to say, and the victim agreed with counsel. (Tr. 199-201). But the victim stated then that appellant actually did those things. (Tr. 201, 202).

**{¶17}** The victim's mother was the next witness. The mother testified that she was originally from Steubenville and that she shared a child (the victim) with the father, although they were never married. (Tr. 207). The mother stated that she and

the victim moved to California but the father had summer visitation with the victim from June until August of 2014. (Tr. 208-209). The mother testified that the victim was supposed to spend the summer at the father's home but instead he spent most of the summer at appellant's home. (Tr. 209-210).

{¶18} The mother testified that when the victim returned home, he was exhibiting aggressive behavior and she could tell that something was wrong. (Tr. 211). In October 2014, the mother received a report from the victim's teacher that the victim was acting "odd" and would not complete an assignment. (Tr. 211). When the mother questioned the victim about it, he started crying uncontrollably. (Tr. 212). Later that day, the mother had the victim get the assignment so he could finish it at home. (Tr. 212). It involved a story about a boy sleeping at his grandmother's house. (Tr. 212). A few days later, the mother questioned the victim about what was bothering him. (Tr. 212). It was then that the victim disclosed to the mother what appellant had done to him. (Tr. 212). She then called the Steubenville Police Department. (Tr. 212-213).

{¶19} The mother also testified that she talked with her son about testifying and telling the truth but she never told him what to say. (Tr. 206-207).

{¶20} Det. Dervis was the state's final witness. Det. Dervis testified that he received the report from the mother in November 2014. (Tr. 242). Det. Dervis stated that the victim was interviewed by a sheriff and a caseworker in California and a video of the interview was sent to him. (Tr. 243). After viewing the victim's interview, Det. Dervis contacted appellant to set up an interview with him. (Tr. 244). During the interview, appellant admitted that the victim kissed his penis. (Tr. 245). Det. Dervis subsequently placed appellant under arrest. (Tr. 246).

{¶21} The prosecutor played a video of appellant's interview with Det. Dervis for the jury. (State Ex. 5). Appellant spent some time talking with Det. Dervis about the victim and various allegations against other people. Appellant then told the detective that if he had done "these sexual things" to the victim, which he denied, the victim would not tell anybody. (State Ex. 5 at 10:28). Det. Dervis then told appellant

the specific allegations the victim made against him. (State Ex. 5 at 10:42). Initially, appellant denied the allegations. (State Ex. 5 at 10:45). But then appellant stated that the victim grabbed appellant's penis. (State Ex. 5 at 10:50). Appellant then claimed the victim asked him if he could kiss his penis and appellant "let" him do it. (State Ex. 5 at 10:52). To be sure, Det. Dervis asked appellant, "You pulled down your pants and let him kiss it?" (State Ex. 5 at 10:58). Appellant answered "yes." (State Ex. 5 at 10:58).

**{¶22}** This evidence is sufficient to convict appellant of rape and sexual battery. The state presented evidence by way of the victim's testimony that appellant engaged in sexual conduct with the victim, who was less than 13 years of age at the time. Thus, the state presented evidence as to each element of rape. The state further presented evidence by way of the mother's testimony that appellant was the person acting in loco parentis of the victim during the time the sexual conduct occurred. Thus, the state presented evidence as to each element of sexual battery.

**{¶23}** Appellant contends the victim's testimony was unreliable because he admitted that his mother coached him and acknowledged that his testimony would determine whether or not appellant would go to prison. But when considering a sufficiency of the evidence challenge, we are to construe the evidence in the light most favorable to the state. And in doing so, there is sufficient evidence going to each element of both rape and sexual battery.

**{¶24}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶25}** Appellant's second assignment of error states:

THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶26}** Here appellant asserts the jury's verdict was against the manifest weight of the evidence. He states that the evidence was primarily the victim's testimony. He argues the jury was lost or misguided as is evidenced by the fact that

they found him not guilty of gross sexual imposition.

**{¶27}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶28}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

**{¶29}** Reversing a conviction based on weight of the evidence after a jury trial is so extreme that it requires the unanimous vote of all three appellate judges rather than a mere majority vote. *Thompkins*, 78 Ohio St.3d at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

**{¶30}** In addition to considering the evidence presented by the state set out above, in reviewing a manifest weight challenge we must also consider the evidence presented by appellant. Appellant was the only witness to testify in his defense.

**{¶31}** Appellant stated that the victim spent most of the summer of 2014 at his house with him. (Tr. 276). He stated they went to the zoo, the park, and fishing. (Tr. 276). Appellant stated that when he learned of the allegations against him, he voluntarily went to the police station for an interview. (Tr. 278). Appellant specifically denied each allegation the victim made against him. (Tr. 278-279, 286).

**{¶32}** On cross-examination, appellant claimed that although he stated in his interview that the victim kissed his penis, it did not actually happen. (Tr. 291-292, 297, 298). He also stated that the victim lied about appellant abusing him. (Tr. 305-306).

**{¶33}** Here the jury was faced with deciding who to believe, the victim or appellant. They found the victim to be the more credible witness. We will not second-guess the jury's credibility determinations as the jury was in the best position to observe the witnesses' gestures, voice inflections, and demeanor. *Rouse*, 2005-Ohio-6328, ¶ 49, citing *Hill*, 75 Ohio St.3d at 205. Appellant's change in his story likely affected how the jury viewed his testimony. The jury watched the video where appellant confessed to Det. Dervis that the victim kissed his penis. Appellant then testified that this act never happened. Clearly, the jury did not believe appellant's testimony.

**{¶34}** Additionally, the fact that the jury found appellant not guilty of gross sexual imposition does not affect the guilty verdicts on the charges of rape and sexual battery.

**{¶35}** In *State v. Johnson*, 7th Dist. No. 15 MA 0197, 2017-Ohio-7702, the appellant argued that his conviction for gross sexual imposition was against the manifest weight of the evidence because the jury acquitted him on two counts of rape and one count of gross sexual imposition yet it convicted him on the remaining count of gross sexual imposition. We found that the fact that the jury found the appellant

guilty of one count of gross sexual imposition and not guilty of the other charges did not mean that his conviction was against the manifest weight of the evidence. *Id.* at ¶ 44. We noted that each count of a multi-count indictment is distinct and independent of all other counts in the same indictment, and consequently inconsistent verdicts on different counts do not justify overturning a guilty verdict. *Id.* at ¶ 46, citing *State v. Keyes*, 7th Dist. No. 08 CO 11, 2008-Ohio-6592, ¶ 28.

**{¶36}** Thus, appellant's convictions are not against the manifest weight of the evidence.

**{¶37}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶38}** Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR A MISTRIAL.

**{¶39}** During the state's opening statement, the prosecutor was discussing appellant's interview with police. The prosecutor then stated:

So, then Detective Dervis - - I mean, this is again after 25 or 30 minutes of [appellant] denying these allegations, Detective Dervis tells [appellant] "Well, if" - - tells him about a tool that the Steubenville Police Department has called a computer Voice Stress Analyzer and this Voice Stress Analyzer is not admissible in court and Detective Dervis tells [appellant] that.

But Detective Dervis explains to [appellant] that the Voice Stress Analyzer is reliable, that it is a reliable tool. Detective Dervis tells him "Let's go do this. You sit down. You talk into a microphone. There's a computer program that detects lies or detects the truth" and again saying "It's a good program, it's a reliable program and let's go do this" and "If it comes back with no deception," meaning that his denials are

true, then Detective Dervis says "[Appellant], you will never hear from me again about this."

**{¶40}** (Tr. 167-168). Appellant objected and moved for a mistrial. (Tr. 168-169). Appellant argued that because the voice stress analyzer (VSA) cannot be used as evidence in a trial the jury should not be permitted to hear about it. (Tr. 169).

**{¶41}** The trial court overruled the motion for mistrial. (Tr. 173). But it gave the jury a curative instruction:

[Y]ou are not to consider any - - obviously the opening statements are not evidence but in terms of a computerized Voice Stress Analysis, that is not admissible in court. You are not to consider that for any purpose, nor the Defendant's choice to participate in using such a machine. That is not to be considered by you for any purpose.

(Tr. 176).

**{¶42}** In his final assignment of error, appellant argues the trial court should have granted his motion for a mistrial. Appellant notes that there is never any mention of test results. So the jury could infer that he refused the test because his statements were untrue.

**{¶43}** A trial court has broad discretion in ruling on a motion for a mistrial. *State v. Love*, 7th Dist. No. 02 CA 245, 2006-Ohio-1762, ¶ 95. Thus, we will not reverse its ruling absent an abuse of discretion. Abuse of discretion is more than error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶44}** Initially, we should note that although Det. Dervis discussed the VSA test with appellant, appellant did not take the test. He confessed before they could discuss the test further.

**{¶45}** As the state points out, during his opening statement, the prosecutor

never suggested that appellant failed the VSA test nor did the prosecutor even state that appellant took the VSA test. And the trial court instructed the jury not to consider anything about a VSA test. A jury is presumed to follow the court's curative instructions. *State v. Bereschik*, 116 Ohio App.3d 829, 837, 689 N.E.2d 589 (7th Dist.1996). Thus, we can presume the jury followed the court's instruction to disregard reference to the VSA test.

**{¶46}** Moreover, in his opening statement and again during his testimony, appellant discussed the VSA test. (Tr. 185, 279). He attempted to use his desire to take the test as a reason for why he stated that the victim kissed his penis. (Tr. 185, 279). Thus, appellant must have thought it was in his interest to bring up the VSA test in an attempt to explain why he made a confession that he later claimed was false.

**{¶47}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶48}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P., J., concurs.