[Cite as *State v. Black*, 2019-Ohio-4977.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108001 |
| v. | : | |
| RAYSHON L. BLACK, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 5, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-17-613986-B; CR-17-614959-A; and CR-17-618389-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eben McNair, Assistant Prosecuting Attorney, *for appellee.*

Rick L. Ferrara, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Rayshon Black ("Black") appeals from his conviction for rape and kidnapping. After a thorough review of the evidence, we find the trial court did not err in admitting the victim's prior consistent statements, defense counsel was not ineffective for failing to object to the alleged hearsay

statements, and Black's conviction is not against the manifest weight of the evidence. We therefore affirm.

## I. Procedural History

{¶ 2} On March 23, 2017, Black was charged in a three-count indictment: Count 1 — rape in violation of R.C. 2907.02(A)(2); Count 2 — kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification; and Count 3 — gross sexual imposition in violation of R.C. 2907.05(A)(5). The charges stem from an incident that occurred in August 2016. The victim in each count is Black's stepdaughter, T.S.

{¶ 3} On August 6, 2018, the matter proceeded to a jury trial. After the trial court denied Black's Crim.R. 29 motion for dismissal, the jury found Black guilty of rape and kidnapping in Counts 1 and 2, respectively, and not guilty of gross sexual imposition in Count 3. The trial court then imposed a prison sentence of ten years on each count, to be served concurrently to each other but consecutive to the sentence imposed in another case at the same sentencing hearing.

{¶ 4} Black now appeals his conviction, assigning three errors for our review:

> I. The trial court reversibly erred in admitting hearsay into evidence in the form of prior consistent statements of the alleged victim without proper application of Evid.R. 801(D)(1).

> II. Defense counsel provided ineffective assistance of counsel by failing to object to hearsay evidence presented at trial.

> III. The manifest weight of the evidence did not support a conviction of Appellant.

## II. Evidence at Trial

{¶ 5} T.S., who was 21 years old at the time of trial, has cerebral palsy due to medical complications suffered at birth. Because of her cerebral palsy, she has difficulty speaking clearly.

{¶ 6} Alicia O'Neill ("O'Neill"), a speech language pathologist with the Cuyahoga County Board of Developmental Disabilities, testified concerning her interaction with the victim, T.S. O'Neill received a referral in 2017 from an employment and planning support administrator at the board to assist T.S. in communicating with potential employers. O'Neill testified that T.S.'s cerebral palsy has caused a motor speech impairment. Because of this impairment, T.S. has difficulty speaking clearly and she could not effectively communicate with potential employers. O'Neill explained that T.S. can communicate verbally, but "it can be difficult for others to understand what she is saying, especially at the conversational level." O'Neill therefore obtained equipment such as a computerized touch pad to help T.S. communicate.

{¶ 7} T.S. testified at trial with the assistance of her touch pad device. In 2016, at the time of the alleged incident, T.S. was living in a home on Linwood Avenue with her mother, Priscilla Black ("Priscilla"), and Priscilla's husband, the defendant. T.S.'s brothers also lived there.

{¶ 8} T.S. testified that on August 4, 2016, she was heading downstairs from her bedroom to get a drink from the kitchen when Black opened the door of his bedroom, grabbed T.S. by the arm, and pulled her into his bedroom. T.S. told Black

to "get off me" and "leave me alone." She stated that Black "kept grabbing me, and I was yanking away, telling him to get off of me, but * * * my body can't — ." T.S. testified that she was not strong enough to fight her stepfather off. T.S. further stated that after Black got her into his bedroom, he put her on the bed, took off her shorts and underpants as well as his shorts, so that he was naked from the waist down, and he "stuck his penis in [her] vagina." T.S. repeatedly told Black to get off of her. According to T.S., at one point, her mother walked in the room and said, "Oh my God * * * you all can't keep doing what you doing" and then left the room. Black eventually stopped, and T.S. left the room to talk to her mother, but her mother would not listen to her.

{¶ 9} Thereafter, T.S. took a shower, placed the clothing she was wearing into the laundry, and later washed her clothes. The next morning, T.S. sent a text message to her stepmother, TaJuan Hatcher ("Hatcher"), stating:

> [Good morning] mom when u get a chan[ce] may u or my dad call me please something happen[ed] to me last night and I [know] that my mom don't believe and what I told her I ask[ed] her not to tell anyone but I [know] she going to say something so if u can may u or my dad please call me thank you this is seri[ous].

{¶ 10} Hatcher testified that when she received T.S.'s text she was at work, and she let T.S. know that she would call her when she got home. She testified that she did not realize how serious the matter was.

{¶ 11} T.S. also called her father, Le.S., and left him a voicemail message asking him to call her back. T.S. told her father in the message that she needed to talk to him about something serious. T.S.'s father testified that T.S. called him

between midnight on August 6, 2016, and the early morning hours of August 7, 2016, but because he is "not really a phone person," he did not check his voicemail until later in the day on Sunday, August 7, 2016. Le.S. testified that although T.S. did not tell him in the message what happened, she let him know that it was "serious." Le.S. attempted to return his daughter's call but the call did not go through. He then saw T.S. two days later, when T.S.'s sister dropped her off at his home.

{¶ 12} On Sunday, August 7, 2016, T.S. went to church with her friend Marcus Kincaid ("Kincaid") and his grandmother. After church, T.S. relayed to Kincaid that something bad had happened to her a couple of days before. Kincaid testified that after church, T.S. was upset and crying.

{¶ 13} T.S. stayed with Kincaid until her sister could pick her up. After her sister picked her up, T.S. stayed with her sister for a couple of days and told her what had happened. Then on August 9, 2016, T.S.'s sister brought T.S. to her father and stepmother's house, where T.S. told her parents what had happened with Black. Hatcher testified that when T.S. had come over that Sunday, T.S. was upset and "scared to talk," but she eventually told Hatcher and Le.S. that her stepfather raped her. Hatcher took T.S. to the hospital but T.S. was unable to get a sexual assault examination.

{¶ 14} Thereafter, Hatcher and Le.S. drove T.S. to the police station to report the rape but were not able to meet with an officer, so they returned home. Because T.S. needed her hair done and she needed a new phone, Le.S. suggested that T.S. go to the bank and get her money. Le.S. testified that he had helped initiate a lawsuit

against the hospital when T.S. was born due to the hospital's alleged negligence and that T.S. ultimately received a medical malpractice settlement. He understood that T.S. had an administrator from the probate court to manage T.S.'s settlement funds until she turned 18 years old. Neither he nor Hatcher knew the amount of the settlement.

{¶ 15} When Le.S. and T.S. went to the bank, they learned that T.S. "had no money." Le.S. contacted T.S.'s attorney to inquire about the funds, to "find out what happened to her money." Thereafter, on August 15, 2016, Le.S. and Hatcher brought T.S. to the police station for the second time to file a police report concerning the rape. They also reported the missing money from T.S.'s account, with the attorney's assistance.

{¶ 16} Jerry Kent, a forensic auditor with the Cuyahoga County Board of Developmental Disabilities, testified regarding his investigation into T.S.'s account, as he had become aware of "questionable expenditures." Through his investigation, he learned that a joint checking account between T.S. and T.S.'s mother, Priscilla, had been set up from T.S.'s trust fund. He discovered that the monies located in this joint account with her mother, totaling $101,000, had been transferred to her mother's own personal account in July 2015, when T.S. was 18 years old. Kent testified that T.S.'s funds were used to purchase items not typically used for an individual's basic care and support, including: a large quantity of alcohol; several automobiles, including a tow truck; and "heavy" auto insurance. By August 2016, both T.S.'s account and Priscilla's personal account had been depleted. Priscilla

testified that she started a towing business with her husband, using funds from the joint account.

{¶ 17} Le.S. testified that at some point after the incident with Black, Priscilla and Black moved out of the Linwood Avenue home. And T.S. testified that she learned after the incident that she owned the Linwood house in which she lived with her mother and stepfather.

{¶ 18} On behalf of the defense, Priscilla testified that T.S. can "scream as loud as I can," but on August 4, 2016, Priscilla did not hear any screaming or yelling. T.S.'s brothers testified that they do not remember anything unusual about T.S.'s demeanor on or around August 4, 2016, and she did not seem upset. They also testified that T.S. did not confide in them about that day. T.S.'s younger brother, who was home on the day of the incident, stated that he did not hear any yelling that day. T.S.'s older brother testified that one Sunday, T.S. went to church with Kincaid and his grandmother and never returned home.

### III. Hearsay

{¶ 19} Black contends in his first assignment of error that the trial court erred in admitting hearsay evidence of prior consistent statements that do not fall within the scope of Evid.R. 801(D)(1). He argues that the testimony offered by Kincaid and Le.S. was inadmissible hearsay because the testimony served no purpose other than to bolster T.S.'s allegation of rape. Black also objects to the state's reading of the text message from the victim on the same basis. Finally, Black

appears to argue that the victim's medical records admitted by the state were inadmissible hearsay. Defense counsel failed to object to the foregoing testimony.

**{¶ 20}** Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, statements made outside of the courtroom, offered at trial to prove the truth of what they assert, are inadmissible "hearsay" unless an exception applies. *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987); *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, ¶ 32; Evid.R. 802.

**{¶ 21}** Where a party fails to object to alleged hearsay testimony, we review for plain error. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 72. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, "'notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Mallory*, 8th Dist. Cuyahoga No. 106052, 2018-Ohio-1846, ¶ 17, quoting *State v. Long*, 53 Ohio St.2d 91, 93, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The "extremely high burden" of demonstrating plain error is on the defendant. *State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, ¶ 20.

## A. Evid.R. 801(D)(1)

{¶ 22} Black contends that certain testimony from Kincaid and Le.S., as well as a text message from T.S. that was read to Hatcher during Hatcher's testimony, are inadmissible hearsay statements. Particularly, he objects to Kincaid's testimony that T.S. told her after church on August 7, 2016, that "something bad happened" to her a couple of days before. Black also objects to the following testimony elicited from T.S.'s father:

> Prosecutor: And hang on. Without telling us what she told you, * * * was she able to tell you [what] happened?
>
> Witness: * * * [S]he told me, * * * but her sister explained it to me better * * * what was really going on.
>
> Prosecutor: So was it your understanding that she had already told [her sister] what happened?
>
> Witness: Yes, because that's who she was with.

{¶ 23} Black contends that this testimony was offered strictly to add credibility to T.S.'s report and it conveyed that T.S. also told her sister what happened. Finally, Black contends that the prosecutor's reading of T.S.'s text message to Hatcher, in which T.S. stated that something serious happened to her the previous night, was improper because Hatcher never responded to the text and the message served only to reiterate T.S.'s testimony.

{¶ 24} Evid.R. 801(D)(1)(b) provides that a statement is not hearsay and is therefore admissible if it is a prior statement by a witness that is "consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]" This rule applies

only to statements that were made prior to the motivation to fabricate. *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 73; *State v. Johnson*, 7th Dist. Mahoning No. 15 MA 0197, 2017-Ohio-7702, ¶ 15; *State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, ¶ 103.

{¶ 25} In explaining the purpose of this rule, the Tenth District Court of Appeals stated:

> What the rule permits is the rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story or falsified his testimony in response to improper motivation or influence, by admitting into evidence a consistent statement made by the witness prior to the time of the suggested invention or of the emergence of the motive or influence to invent or falsify, as tending to rebut the charge.
>
> * * *
>
> Because the result of exclusion of prior consistent statements, where they are sought to be used for rebuttal purposes, would be to permit an implication of fabrication or falsification to stand without challenge, their admission should be favored to the extent that a generous view should be taken of the entire trial setting in order to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation.

*Motorists Mut. Ins. Co. v. Vance*, 21 Ohio App.3d 205, 207, 486 N.E.2d 1206 (10th Dist.1985).

{¶ 26} Courts have repeatedly held that attacking a victim's credibility during opening statements is grounds for permitting a prior consistent statement into evidence under Evid.R. 801(D)(1)(b). *State v. Abdussatar*, 8th Dist. Cuyahoga No. 86406, 2006-Ohio-803, ¶ 15 (finding that because defense counsel contended in his opening statement that the victim fabricated the rape, and because the victim

testified and was subject to cross-examination, the trial court did not err by allowing a prior consistent statement in a letter to be admitted into evidence); *State v. Hunt*, 10th Dist. Franklin No. 12AP-103, 2013-Ohio-5326, ¶ 39 (stating that defense counsel's opening statement implied that the victim had been untruthful in her statements to police and therefore this allegation of recent fabrication or improper influence permitted the state to introduce the victim's prior consistent statements to rehabilitate her testimony); *State v. Crawford*, 5th Dist. Richland No. 07 CA 116, 2008-Ohio-6260, ¶ 64 (noting that implications of fabrication during opening statements are sufficient to allow the state's use of Evid.R. 801(D)(1)(b).

{¶ 27} Here, defense counsel in his opening statement asserted that the victim had an ulterior motive to lie about the rape:

> What we do know * * * [is that T.S.] learned that the settlement money that she expected to have when she turned 18 wasn't there. You also are going to learn that the police report associated with the rape also talks about the theft. So if you want a motive for somebody to say something, there it is. The million dollar settlement or whatever it is that she expected to be receiving at 18 [is] not there.

{¶ 28} Upon review, we find that the victim's prior consistent statements as outlined above were properly admitted to rebut defense counsel's suggestion in his opening statement that T.S. was motivated by the loss of her settlement funds to make an allegation of rape. The evidence shows that each of T.S.'s prior statements were made before she learned that the bank account containing her settlement funds had been depleted, thus demonstrating that T.S. could not have been motivated by the missing funds to lie about the rape. T.S. told Kincaid on August 7, 2016, three

days after the rape, that "something bad happened" a couple of days before. T.S.'s sister drove T.S. to her parents' home on August 9, 2016, two days later, where T.S. reported to Hatcher and Le.S. what happened with her stepfather. The text message to which the prosecutor referred during Hatcher's testimony was sent on August 5, 2016, the day after the rape, and Hatcher received the message while at work and told her, via text message, that she would call her when she got home. Before having a chance to phone T.S., however, on August 9, 2016, T.S. arrived at Hatcher's home, where Hatcher learned of the rape. T.S., Hatcher, and Le.S. learned about the depleted bank account approximately August 15, 2016, one week later.

{¶ 29} Moreover, even if we were to find this testimony improper, we find admission of the statements does not rise to the level of plain error. Kincaid, Hatcher, and Le.S. testified regarding what T.S. had told them. Because T.S. had testified as to what happened, including whom she told about the incident, and the defense cross-examined her concerning her testimony, the testimony is cumulative. The defendant has failed to demonstrate that the admission of the victim's prior statements altered the outcome of the trial. Accordingly, we find no plain error in the admission of the victim's prior statements.

### B. Medical Records

{¶ 30} At the close of the state's case, the prosecutor admitted into evidence, without objection, T.S.'s medical records from the Cleveland Clinic. Black contends that the following statement in the victim's medical records, which are dated

June 12, 2017, "did nothing more than repeat the hearsay statement of T.S." and is therefore hearsay:

> Patient has been getting her care from Metro until recently. According to [Patient and her caretaker], [the patient] was sexually abuse[d] by her mother's boyfriend, the case is with the police. She never had a rape kit, the time line is not very clear. According to [the patient's] caretaker, she was told that it was late for [a] rape kit. She is asking for comprehensive STD check.

{¶ 31} Once again, the statement made to the nurse at the hospital in June 2017 is cumulative evidence, as T.S. testified at trial that her mother's boyfriend (husband) raped her. And Black has failed to demonstrate that T.S.'s statement to the nurse, as reported in her medical records, altered the outcome of the trial. We therefore find no plain error in the admission of the medical records.

{¶ 32} Black's first assignment of error is overruled.

### IV. Ineffective Assistance of Counsel

{¶ 33} In his second assignment of error, Black contends that trial counsel's failure to object to the alleged hearsay statements outlined in his first assignment of error, including the victim's prior statements to Le.S., the text message T.S. sent to Hatcher, and T.S.'s medical records, constituted ineffective assistance of counsel.

{¶ 34} To establish a claim of ineffective assistance of counsel, Black must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, "the failure to make a showing of either

deficient performance or prejudice defeats a claim of ineffective assistance of counsel." *State v. Davenport*, 8th Dist. Cuyahoga No. 106143, 2018-Ohio-2933, ¶ 25, citing *Strickland* at 697.

{¶ 35} In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Counsel's tactical decisions or trial strategy cannot form the basis for a claim of ineffective counsel. *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). And the failure to object to error may be viewed as a tactical decision. *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 82. Because "'objections to each potentially objectionable event could actually act to [a] party's detriment, * * * any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state.'" *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006).

{¶ 36} Here, we found the victim's prior consistent statements to Hatcher and Le.S., including the statement made through her text message, were not improper. Therefore, trial counsel was not deficient for failing to object to the statements. Moreover, we found no plain error concerning the purported hearsay statement contained in the victim's medical records. Consequently, we cannot find

that were it not for counsel's purported errors, the result of the trial would have been different.

{¶ 37} Black's second assignment of error is therefore overruled.

V. Manifest Weight of the Evidence

{¶ 38} Black contends in his final assignment of error that his convictions were against the manifest weight of the evidence. In support, he argues that there is no physical evidence of rape and T.S.'s mother and her brothers testified that they did not hear or see anything unusual on the date of the incident.

{¶ 39} A manifest weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). This challenge raises a factual issue:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The use of the word "manifest" in the standard of review "means that we can only reverse the trier of fact if its decision is very plainly or obviously contrary to the evidence." *State v. Hernandez*, 8th Dist. Cuyahoga No. 106577, 2018-Ohio-5031, ¶ 20.

{¶ 40} Black was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01(A) defines "sexual conduct" as "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." Under R.C. 2901.01(A)(1), "force" is "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

{¶ 41} Black was also convicted of kidnapping in violation of R.C. 2905.01(A)(4). This statute provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will." R.C. 2905.01(A)(4). "Sexual activity" is sexual conduct or sexual contact, or both. R.C. 2907.01(C). "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 42} Here, T.S. testified that on August 4, 2016, her stepfather grabbed her by the arm as she was walking down the stairs and pulled her into his bedroom and raped her. She stated that Black "kept grabbing at [her]," and she repeatedly told Black to "get off [her] and "leave [her] alone." She further stated that Black put her on the bed, took off her shorts and underpants as well as his shorts, and he "stuck

his penis in [her] vagina." T.S. testified that while she attempted to get away, ultimately she was not strong enough to fight off her stepfather.

{¶ 43} It is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and there is no requirement that a rape victim's testimony be corroborated. *State v. Castellon*, 8th Dist. Cuyahoga No. 106813, 2019-Ohio-628, ¶ 41; *State v. Magwood*, 8th Dist. Cuyahoga No. 105885, 2018-Ohio-1634, ¶ 32; *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 40; *State v. Butts*, 8th Dist. Cuyahoga No. 55549, 1989 Ohio App. LEXIS 2856, 4 (July 20, 1989) (stating that a lack of physical evidence "does not require reversal since a victim's testimony, if believed, is sufficient to obtain and sustain a rape conviction"); *State v. Timmons*, 10th Dist. Franklin Nos. 13AP-1038 and 13AP-1039, 2014-Ohio-3520, ¶ 23 (stating that physical or forensic evidence is not required to prove rape).

{¶ 44} T.S.'s testimony, however, was also supported by the testimony of other witnesses. T.S.'s stepmother, Hatcher, testified that she received a text message from T.S. on August 5, 2016, stating that she needed to talk to Hatcher about something "serious" that happened to her "last night." And Hatcher testified that when T.S.'s sister drove T.S. to her stepmother and father's house, T.S. was upset and "scared to talk." Further, T.S.'s friend, Kincaid, testified that on August 7, 2016, when he and his grandmother picked T.S. up for church, she was upset and crying and she told him "something bad" happened to her a couple of days prior. Then on August 15, 2016, T.S.'s stepmother and father drove T.S. to the police station where T.S. reported she had been raped by her stepfather.

**{¶ 45}** In light of the foregoing, and in resolving any purported conflicts in the evidence, we cannot find the jury clearly lost its way and created such a manifest miscarriage of justice that Black's conviction for rape and kidnapping must be reversed and a new trial ordered. This case is therefore not the exceptional case in which the evidence weighs heavily against the conviction.

**{¶ 46}** Black's third assignment of error is overruled.

**{¶ 47}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHELLE J. SHEEHAN, JUDGE

RAYMOND C. HEADEN, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS WITH SEPARATE CONCURRING OPINION ATTACHED

SEAN C. GALLAGHER, P.J., CONCURRING:

**{¶ 48}** Although the majority addresses the argument as presented by the parties, it is important to note that Black's assertions are based on faulty

assumptions. Black has not demonstrated that the statements to which he belatedly objects were offered for the truth of the matter asserted under Evid.R. 801(C) — he simply assumes that to be the case. If the statements are not hearsay, then there is no purpose to demonstrating those statements to be considered non-hearsay under Evid.R. 801(D)(1)(b).

{¶ 49} Out-of-court statements are not hearsay if offered from some other reason, such as proving the statement itself was made. Evid.R. 801 Staff Notes. All of the disputed statements were introduced to demonstrate when or if the victim's initial disclosures of the rape occurred before the theft allegations arose. The challenged statements themselves offered nothing of substantive value, only that the victim was attempting to disclose something at or around the time of the crime. In fact, the state carefully limited the witnesses' discussions to the fact of the attempted disclosures themselves without letting the witnesses divulge the substance of the disclosure. Because Black has not demonstrated that the disputed statements fit the definition of hearsay under division (C), we need not consider whether the statements are considered to be non-hearsay under Evid.R. 801(D)(1)(b).

{¶ 50} With respect to the admitted medical records, which contained a statement regarding the allegations of sexual assault and the ensuing treatment, Black also claims that such a statement is not admissible as a prior consistent statement under Evid.R. 801(D)(1)(b). That argument is irrelevant in light of the fact the state introduced the medical records under Evid.R. 803(4), which is a stand-alone exception to the inadmissibility of hearsay when the challenged statement is

made for the purposes of a medical diagnosis or treatment. Black has not asked us to consider the procedural mechanism under which the statement was actually admitted into evidence. This alone is dispositive. App.R. 16(A)(7). Having concluded that the statements were admissible, there can be no finding of a deficient performance and I otherwise agree with the majority's disposition.