[Cite as *In re B.A.*, 2022-Ohio-2775.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE B.A., JR.                                    :
                                                   :          No. 111101
A Minor Child                                      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 11, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-21102657

---

### *Appearances:*

Timothy Young, Ohio Public Defender, and Lauren Hammersmith, Assistant State Public Defender, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Kyle Dillon and Kenan Mack, Assistant Prosecuting Attorneys, *for appellee*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Juvenile-appellant, B.A., Jr. ("B.A.") (d.o.b. December 16, 2004), appeals from the juvenile court's adjudication of delinquency. He raises the following assignment of error for review:

> The Cuyahoga County Juvenile Court violated B.A.'s right to due process of law, because his adjudication for felonious assault was not supported by credible evidence, in violation of the Fifth and Fourteenth

Amendments to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution.

{¶ 2} After careful review of the record and relevant case law, we affirm B.A.'s adjudication.

## I. Procedural and Factual History

{¶ 3} On April 6, 2021, a complaint was filed against B.A., charging him with a single count of felonious assault in violation of R.C. 2903.11(A)(1). The complaint stemmed from allegations that B.A. caused the victim, Jayda Bhagmath (the "victim"), serious physical harm during an altercation that occurred on February 14, 2021.

{¶ 4} On October 12, 2021, the matter proceeded to an adjudication hearing, where the following facts were adduced.

{¶ 5} On the evening of February 14, 2021, the victim was working a shift at Dave & Busters in Westlake, Ohio. Approximately one hour into her shift, the victim was stationed at the prize counter when she observed a verbal argument between two female customers. One of the females was later identified as B.A.'s mother, S.B. the victim testified that she intervened in the argument and instructed S.B. that the line to claim prizes did not start where S.B. was standing. The victim testified that S.B. was "irritable" and indicated that she would not move because "the line is here because that's where I'm at." (Tr. 12.) In an effort to defuse the situation, the victim called for her manager, Cameron Huston ("Huston"), who immediately assisted S.B.

**{¶ 6}** Once S.B. was checked out, she sent her children to retrieve additional prizes with her leftover game tickets. The victim, however, informed S.B. that she "wasn't taking care of them." (Tr. 14.) The victim explained her refusal to help S.B. as follows:

> The rule is if a customer is irritable or they have a problem, just to let a manager handle it instead of handling it yourself so there's no issues or problems.

(Tr. 14.) In response to the victim's refusal to offer assistance, S.B. began yelling that the victim deserved to be fired. During this verbal altercation, S.B. was accompanied by her minor children and an unidentified female friend. The victim testified that at least two of S.B.'s children appeared to be under the age of 13 years old. The victim stated that the remaining child, later identified to be B.A., was a male who appeared to be over the age of 13 years old. The victim testified that as the verbal altercation gained momentum, everything "just got crazy." (Tr. 16.) She stated that "people were getting in manager's faces, yelling at them." (Tr. 16.)

**{¶ 7}** As Dave & Buster employees were attempting to have S.B. and her group leave the prize center, the victim walked away from her station in an effort to find a safe location. At that time, however, the victim was approached by a male who she identified in court as being B.A. The victim stated that B.A. "got in [her] face," prompting her to push B.A. out of "[her] safety zone." (Tr. 17.) The victim was then dragged to the ground by her hair, where she was punched and kicked repeatedly by numerous individuals. The entirety of the incident was captured by the surveillance cameras located inside the Dave & Busters. As a result of the

incident, the victim sustained a concussion, internal bruising, and abrasions on her face, ear, and neck.

{¶ 8} Regarding the identity of her assailants, the victim conceded that she could not see who was striking her while she was on the ground due to the intensity of the assault. However, she estimated that "it was all of them. It felt like all of them were on me." (Tr. 25.) In addition, when asked to describe the specific actions B.A. took during the incident, the victim stated as follows:

> When it came to [B.A.] actually doing the actions, all I know is that I got pulled and he moved forward, so I really don't know exactly what he did per se, but I know he was one of them stomping on me because it was a larger — I could feel the largeness of the foot.

(Tr. 23.)

{¶ 9} On behalf of the prosecution, Huston confirmed that he observed a verbal and physical altercation between the victim and a group of customers. Huston estimated that the victim was confronted by seven individuals, including two adult females and five males. Huston testified that one of the males was "older," and appeared to be in his 20s or 30s. (Tr. 42.) Relevant to this appeal, however, Huston was unable to recall the physical characteristics of any on the individuals involved in the victim's assault.

{¶ 10} On October 19, 2021, the juvenile court found the allegations of the complaint were proven beyond a reasonable doubt. Accordingly, B.A. was adjudicated delinquent and was committed to the legal custody of the Department of Youth Services for institutionalization in a secure facility for an indefinite term

consisting of a minimum period of 12 months and a maximum period not to exceed B.A.'s attainment of the age of 21 years.

{¶ 11} B.A. now appeals from his adjudication.

## II. Law and Analysis

{¶ 12} In his sole assignment of error, B.A. argues his adjudication for felonious assault is against the manifest weight of the evidence. He contends "the state did not meet is burden to prove that B.A. was the one who assaulted [the victim]."

{¶ 13} In determining whether a juvenile court's adjudication of delinquency is against the manifest weight of the evidence, the applicable standard of review is the same standard applied in adult criminal convictions. *In re A.W.*, 8th Dist. Cuyahoga No. 103269, 2016-Ohio-7297, ¶ 43, citing *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 34; *see also In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 28.

{¶ 14} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court examines the

entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 15} Generally, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12; *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 155. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 4 (Aug. 22, 1997).

{¶ 16} In addition, a trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, a conviction or adjudication is not against the manifest

weight of the evidence "solely because the jury heard inconsistent or contradictory testimony." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 72, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38; *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.) ("A defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness's testimony are not credible or were inconsistent or contradictory."); *see also State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37 ("'While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'"), quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 7 (May 28, 1996).

{¶ 17} Finally, we note that a conviction or adjudication may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness's testimony be corroborated to be believed. *See, e.g., State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 38; *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 43 (8th Dist.); *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 84 (4th Dist.).

{¶ 18} In this case, B.A. was adjudicated delinquent for committing an act which if committed by an adult would constitute the offense of felonious assault, in violation of R.C. 2903.11(A)(1). Felonious assault occurs when a person knowingly causes serious physical harm to another or to another's unborn. R.C. 2903.11(A)(1). A person acts knowingly "regardless of purpose, when the person is aware that the

person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 19} On appeal, B.A. does not dispute that the victim was caused serious physical harm as result of the altercation involving members of his family. However, he maintains that "he did not touch [the victim]" and that his role in the altercation was limited to being in the vicinity of the victim at the time she was pulled to the ground. In support of his position, B.A. maintains that (1) the victim could not state with certainty the identity of the person who struck her, (2) the video footage of the incident did not clearly show who participated in the assault, and (3) the police officers who investigated the scene did not get any useful information or description of the parties involved "due to the chaotic situation and environment."

{¶ 20} In this case, there is no dispute that in the chaos of the altercation, the victim could not decipher the specific roles each assailant took in her assault. She explained that as she was attempting to move to safety, she was confronted by B.A., who got in the victim's face and entered her safety zone. When the victim pushed B.A. away out of fear, she was immediately pulled to the ground where she was punched and kicked repeatedly. Although the victim believed that S.B.'s entire group participated in her assault, the victim testified that she knew B.A. "was one of them stomping on me" due to the size of the foot — "because it was a larger — I could feel the largeness of the foot." (Tr. 23.)

{¶ 21} Although there is no requirement that a witness's testimony be corroborated to be believed, we find that a reasonable juror could conclude that the

surveillance video footage introduced at trial supported the victim's identification testimony in this matter. At trial, the victim identified B.A. in the video footage as the male who was wearing a black jacket and blue jeans. Consistent with the victim's testimony, this individual is seen near the prize counter at the onset of the verbal altercation. The male is later seen confronting the victim as she exited the prize counter and attempted to move to safety. Although it is unclear whether the male wearing the black jacket was involved in the initial act of pulling the victim to the ground, he is later seen standing directly over the victim while she was being physically assaulted on the ground. Approximately three minutes and 20 seconds into the surveillance video, the individual matching B.A.'s description is observed making a stomping motion with his right leg while in the victim's proximity. Weighing this evidence and all reasonable inferences that may be drawn therefrom, we cannot say that this is one of those exceptional cases in which the trier of fact clearly lost its way and created a manifest miscarriage of justice that B.A.'s adjudication must be reversed. B.A.'s adjudication is not against the manifest weight of the evidence.

{¶ 22} The sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR