[Cite as *State v. Hatcher*, 2023-Ohio-3884.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                   No. 112552

    v.                                 :

VICTOR HATCHER,                         :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 26, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-673116-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Diana G. Nassar, Assistant Prosecuting Attorney, *for appellee.*

Sylvester Summers, Jr., *for appellant.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Victor Hatcher ("appellant") challenges his six-month prison sentence from the Cuyahoga County Court of Common Pleas following his conviction for attempted assault. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} This appeal arose from an incident involving the Cleveland Fire Department in February 2022. Firefighters responded to a two-story home after the caller who resided on the second floor reported smoke coming from an electrical outlet.

{¶ 3} Firefighters arrived on scene and went to the second floor of the residence. They used a thermal imaging camera and determined that heat was coming from the apartment on the first floor, which was where appellant resided.

{¶ 4} Firefighters knocked on appellant's apartment door. His girlfriend opened the door and allowed the firefighters to enter the apartment. In order to examine the wires going to the second-floor outlet, firefighters had to remove several ceiling tiles.

{¶ 5} While the firefighters were investigating, appellant approached the firefighters and became angry, demanding that they leave. Lt. Todd O'Neill was the last to leave, and as he did so, appellant tackled him to the ground. Two other firefighters had to pull appellant off of O'Neill. Once the firefighters were outside, appellant went to his vehicle and retrieved a firearm. He waved the firearm at the firefighters and yelled at them. The battalion chief ordered the firefighters back to their rigs and called the police, who subsequently arrested appellant.

{¶ 6} Appellant was charged with one count of assault, a felony of the fourth degree, in violation of R.C. 2903.13(A), and one count of disrupting public services, a felony of the fourth degree, in violation of R.C. 2909.04(A)(3). The assault charge

also contained a furthermore clause stating that the victim was a firefighter who was performing his duties at the time.

{¶ 7} Appellant and the state negotiated a plea deal wherein appellant pled guilty to an amended charge of attempted assault, a felony of the fifth degree, and the remaining charge was dismissed.

{¶ 8} At the sentencing hearing, the court heard from O'Neill and another firefighter who was on the scene. The court also heard from defense counsel, and appellant's uncle, who was a retired lieutenant with the Cleveland Fire Department.

{¶ 9} Appellant then addressed the court and denied any wrongdoing. At this point, the court gave appellant the opportunity to speak with his counsel regarding whether he desired to withdraw his guilty plea. Following this conversation, appellant stated that he wished to move forward with the sentencing.

{¶ 10} The court stated for the record that it had reviewed the entire case file, along with the presentence-investigation report, including appellant's statements contained therein, which the court noted were consistent with his statements at the hearing that day.

{¶ 11} With regard to appellant's criminal history, the court stated:

The Court will note the presentence investigation report. As to the defendant's criminal history, there was a case in Cleveland Municipal Court in 2010-CRB-037868, misconduct [on] public transportation, where the defendant was found guilty and sentenced to pay a fine and court costs. There was a case in 13-CRB-00194 in Shaker Heights Municipal Court where the defendant was found guilty of theft and sentenced to five days incarceration. There was a matter in 2013 where the charges were dismissed for wrongful prosecution. The Court is not taking that into consideration.

There was a matter in 2017 with no disposition available. The Court is not taking that into consideration. There is a case CR-19-642376 in adult felony court where the defendant had pled guilty to assault, a misdemeanor of the first degree in refront [sic] of Judge David Matia and he was sentenced to time served.

There is an aggravated menacing matter in 2021 Cleveland Municipal Court. The case does not — it was dismissed without prejudice. The Court is not taking that into consideration. The Court is taking into consideration the current case and the facts as been [sic] outlined by the State as well as the defense. The Court is not taking into consideration any Summit County case that is currently pending with the defendant as he's presumed innocent.

{¶ 12} The court further stated that it had considered the principles and purposes of felony sentencing along with the statutory seriousness and recidivism factors.

I do take into consideration some of the defendant's statements in mitigation in this matter. I'll review [R.C.] 2929.11 here out loud on the record. In fashioning the sentences in this case, the Court has considered the need to protect the public from future crime by the defendant and others, to punish the offender, and to promote the defendant's effective rehabilitation while using the minimum sanctions to accomplish those purposes without imposing an unnecessary burden on the state or local government resources. This includes the needs for incapacitation, deterrence, rehabilitation of the defendant and restitution to the victim and/or public. The sentence is commensurate with but not demeaning to the seriousness of the defendant's conduct and its impact on the victim consistent with sentences with similar crimes by similar offenders and as in no way based on the defendant's race, ethnicity, gender, or religion.

As to the seriousness and recitivism [sic] factors of [R.C.] 2929.12, I have considered them and I've waived the factors which indicate the defendant's conduct is more or less serious than that normally constituting the offense charged, as well as the factors which would indicate that the defendant is more or less likely to commit future crimes.

\* \* \*

What may apply here to some extent is the victim's suffering of some physical, psychological harm. Other factors the Court is considering, the defendant did place the community in danger by his actions that day.

As to the offender[']s conduct being less serious under [R.C.] 2929.12(C), I've reviewed these factors as well, and these factors do not apply.

The extent which the victim induced and/or facilitated the offense, the victim did not induce or facilitate it. The defendant acted under strong provocation, the defendant did not act under strong provocation.

The defendant did not cause or expect to cause physical harm to a person or a property. That is not the case as the defendant's actions did or should have been expected to cause physical harm to the victim in this matter.

Lastly, there are substantial grounds to mitigate the defendant's conduct even if they do not constitute a defense. I note that the defendant has some mitigation here, but they're not substantial grounds to exist.

So as to the conduct being more serious or the conduct being less serious, none of the factors apply in either event. They, in effect, cancel each other out because none apply.

As to the event of recidivism being more likely under Revised Code 2929.12(D), the Court believes the defendant is more likely to commit future crimes as to the following two factors that apply: The defendant does have a history of criminal convictions or juvenile delinquency adjudications, and the defendant has not shown genuine remorse here in front of the Court. The other factors present before the Court do not apply.

As to looking at whether or not the offender's recitivism [sic] is less likely, I've reviewed these factors as well in [R.C.] 2929.12(E), they are the defendant has no prior juvenile delinquency adjudication or no prior adult conviction. That is not the case. The second one, the defendant had led a law-abiding life for a significant number of years. That is not the case. The third is that the offense was committed under

circumstances unlikely to recur. The Court cannot say that that is the case as well. And lastly, the defendant shows genuine remorse. As I've noted before, the defendant does not.

\* \* \*

{¶ 13} The court sentenced appellant to six months in prison. Appellant then filed the instant appeal, raising two assignments of error for our review:

> 1. The trial court erred to the prejudice of appellant by sentencing him in contravention of the principles set forth in R.C. 2929.11 and the factors considered in R.C. 2929.12.

> 2. Appellant was denied effective assistance of counsel.

## II. Law and Analysis

{¶ 14} In his first assignment of error, appellant argues that the trial court erred by failing to consider appellant's expression of remorse and other mitigating factors presented to the court at sentencing. He contends that these factors favor a lesser sentence than the six months given to him.

{¶ 15} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Cedeno-Guerrero*, 8th Dist. Cuyahoga No. 108097, 2019-Ohio-4580, ¶ 17, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. Pursuant to R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence, or vacate a sentence and remand for resentencing if it "clearly and convincingly finds" that the "sentence is otherwise contrary to law." A sentence not authorized by statute is contrary to law. *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶ 15 ("Our conclusion

reflects the well-established principle that a court acts contrary to law if it fails to impose a statutorily required term as part of an offender's sentence.").

{¶ 16} Appellant argues that the record does not support the six-month sentence that he received. He contends that his sentence for the offense of attempted assault is outside of the statutory range and that the trial court failed to consider his expression of remorse and other mitigating factors presented at sentencing.

{¶ 17} The state asserts that the court stated on the record that it had considered the principles and purposes of felony sentencing. The court analyzed the recidivism factors, appellant's criminal history, the physical and emotional harm caused to the victim, the danger appellant posed to the community on the day of the incident, and the fact that appellant was not provoked by the victim. The state also argues that the court acknowledged that it had considered the mitigating factors presented by the defense. In addition, the state asserts that the sentence was in the statutory range for a fifth-degree felony, which is six to 12 months in prison.

{¶ 18} While appellant contends that the trial court did not consider the mitigating factors, appellant does not identify the specific factors that he claims were not considered by the court. The record reflects that the court spent significant time going through R.C. 2929.11 and 2929.12 and addressing all of the factors listed therein.

{¶ 19} Appellant further contends that the trial court did not consider his expression of remorse, but it is not clear from the transcript where such an

expression would have occurred.  At sentencing, Lt. O'Neill described the events that

occurred at appellant's apartment:

> In order to verify that nothing was on fire, we had to remove some ceiling tiles.  They were drop tiles.  I don't know where exactly Mr. Hatcher arrived from, but the next thing I know, he was standing behind me screaming at me to get out of his apartment.  I tried to explain to him that we were there to just make sure that nothing was on fire.  He continued to scream at me.  I told him, fine we'll leave.  We attempted to leave.  He stood in the doorway.  I asked him to move.  He screamed at me that he wasn't going to be told what to do in his house.  So we tried to attempt to push past to get out of the apartment, as per his request. I made sure the guys in front of me got out.  I was the last one to go out.
>
> As I was going out, I used our thermal imaging camera to kind of scan the ceiling one last time to make sure nothing was one [sic] fire.  When I looked up at the thermal imaging camera, that's when Mr. Hatcher attacked me and tackled me to the ground.  Lieutenant Jarus and Firefighter Louis pulled Mr. Hatcher off of me.  We thought the situation was resolved.  We all exited the side of the building.
>
> When we went out the side of the building or the structure, we came to the front.  I met my battalion chief there and tried to explain to him the situation.  At that time, Mr. Hatcher came out the front door screaming that he wanted a complaint form.  I turned around and told him that we don't carry those, that he would have to call city hall to get those complaint forms.  As he was still screaming at us that he wanted complaint forms, he went into his vehicle, came out of his vehicle with a pistol, raised it at everybody, showed it to everybody, and his words to us at that point were, I bet you ain't coming back up in this b****.
>
> The battalion chief at that point ordered everybody into their rigs to move down the street as we called for police to arrive and handle the situation.
>
> I'd just like the Court to know, you know, that particular day, you know, we showed up in good faith to protect Mr. Hatcher and his family and anybody else that lived in that structure from the structure being on fire.  We know [sic] in no way or shape wanted to instigate anything with Mr. Hatcher or anybody else in that structure.  We just wanted to do our duty and leave.  The point where the weapon was raised and

brandished at everybody on scene, there [were] four fire companies' worth of men that were then threatened that day and had Mr. Hatcher pulled the trigger, lives would have changed forever that day. Not just the firemen on the scene or Mr. Hatcher's life or anybody else's life, but our families' lives.

I have my wife in the courtroom with me today. You know, her life would have been changed forever had that trigger been pulled, not to mention children, mothers, fathers, anybody else. * * *

{¶ 20} When addressing the court, appellant characterized the incident as being "blown completely out of proportion" and stated that he thought the victims were being "excessive," did not act professionally, and were abusing their privilege in court that day. We cannot find any expression of remorse within these statements. Appellant took absolutely no accountability for the criminal act to which he pled guilty. Rather, on the record, he continued to place all blame on the victim, who was a public servant simply doing his job, working to ensure the safety of the community, when he was attacked by appellant. The trial court correctly noted that appellant did not show genuine remorse.

{¶ 21} Finally, the state is correct that a six-month prison sentence is within the statutory range for a fifth-degree felony; thus, appellant's argument to the contrary is without merit.

{¶ 22} Appellant's first assignment of error is overruled.

{¶ 23} In his second assignment of error, appellant contends that he received ineffective assistance of counsel because his counsel failed to inform him of a plea offer made by the State, failed to research his criminal background prior to the start of the plea hearing, and was not aware of the sentence possibilities at the hearing.

{¶ 24} To establish a claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance was deficient in some aspect of his representation and that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When a defendant enters a guilty plea, he waives a claim of ineffective assistance of counsel except to the extent that ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 30 (8th Dist.); *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11. To prevail on an ineffective assistance of counsel claim in such circumstances, the defendant must show that he was prejudiced by demonstrating a reasonable probability that but for counsel's errors, he would not have pled guilty to the charged offenses and would have instead insisted on going to trial. *State v. Houk*, 8th Dist. Cuyahoga No. 110115, 2021-Ohio-2107, ¶ 20, citing *Vinson* at ¶ 30; *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶ 25} In Ohio, every properly licensed attorney is presumed to be competent, and a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). When evaluating counsel's performance on an ineffective assistance of counsel claim, the court "must indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689; *see State*

v. *Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.), quoting *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69 ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'").

{¶ 26} "When a defendant enters a guilty plea, he generally waives all appealable errors that may have occurred unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea." *State v. Geraci,* 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 14, citing *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-2897, ¶ 5; *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 5; *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus.

{¶ 27} "Moreover, when a defendant enters a guilty plea as part of a plea bargain, he waives a claim of ineffective assistance of counsel, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing and voluntary." *State v. Forrest*, 8th Dist. Cuyahoga No. 109230, 2021-Ohio-122, ¶ 6, citing *Milczewski* at *id*.; *Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, at ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992).

{¶ 28} Appellant does not argue in his brief that his plea was not intelligently, knowingly, and voluntarily made, nor does the record reflect such circumstances. It appears from the record that appellant communicated with his counsel throughout the proceedings. When questioned by the court, appellant recognized that his

attorney had discussed the strengths and weaknesses of the state's case and that his counsel had obtained a resolution that was less than the indictment. He further acknowledged that there was nothing more that he could have asked his attorney to do.

{¶ 29} However, appellant went on to state that he disagreed with his attorney that the case was "winnable." At this point, the court stopped the plea hearing so that appellant could discuss the case further with his attorney.

{¶ 30} The parties reconvened on the date of trial and at that time, the court again questioned appellant as to his satisfaction with his representation. Appellant stated that he was satisfied and agreed with the court that his counsel was a very good attorney. Moreover, at his sentencing, the court asked appellant if he believed that he waived his constitutional rights knowingly, intelligently, and voluntarily on the day that he entered his guilty plea, and appellant responded that he did.

{¶ 31} Appellant has failed to cite any portion of the record showing where his counsel's performance fell below a reasonable standard and has not demonstrated that his plea was not knowingly, voluntarily, and intelligently made. We find that appellant has not demonstrated a reasonable probability that but for counsel's alleged errors, he would not have pled guilty to the attempted assault charge and would have gone to trial instead. Appellant's second assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY IN PART AND CONCURS IN PART (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY IN PART AND CONCURRING IN PART:

{¶ 33} I write to address the first assignment of error, upon which I concur in judgment only. I otherwise fully concur with the majority on the second assignment of error, and I agree that the judgment of the trial court should be affirmed.

{¶ 34} Under his first assignment of error, appellant claims that the sentence was imposed in contravention of R.C. 2929.11 and 2929.12. Appellant simply makes a blanket statement that his six-month sentence is not within the statutory range, which is false; and he makes a conclusory assertion that the trial court did not consider the purposes and principles of felony sentencing set forth in R.C. 2929.11

and the sentencing factors set forth in R.C. 2929.12, but he does not reference relevant portions of the record to affirmatively demonstrate this to be the case. Therefore, consideration of the appropriate facts can be presumed. *See State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 243, citing *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 35. Insofar as appellant baldly asserts that the trial court failed to consider his expression of remorse and other mitigating factors, the record reflects that appellant showed no remorse and that proper consideration of R.C. 2929.11 and 2929.12 was made. Moreover, the trial court stated in the sentencing journal entry that it considered "all required factors of the law" and it found that "prison is consistent with the purpose of R.C. 2929.11." This alone is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *See Clinton*, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 14; *State v. Rice*, 8th Dist. Cuyahoga No. 110674, 2022-Ohio-1068, ¶ 11, citing *State v. Levison*, 8th Dist. Cuyahoga No. 110281, 2021-Ohio-3601, ¶ 17. Finally, it is not for an appellate court to review whether the record clearly and convincingly supports the sentencing factors and considerations under R.C. 2929.11 and 2929.12, and "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *See State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 31, 42. For these reasons, I would overrule the first assignment of error.